UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARIANA QAYUMI,

               Plaintiff,

    v.

TALENT NET, INC., et al.,

               Defendants.

Case No.  21-cv-00323-JD

**ORDER RE MOTION TO DISMISS**

In a second amended complaint (SAC), plaintiff Ariana Qayumi alleges 14 federal and California state law employment claims against defendants RBC Capital Markets, LLC and TalentNet, Inc.  Dkt. No. 33.  Qayumi says she was recruited by RBC as a product manager in its "West Coast Innovation Lab" in 2016.  *Id.* ¶ 1.  Rather than employing Qayumi directly, RBC hired her as a contractor through the TalentNet staffing agency.  *Id.*  Qayumi alleges a wide array of workplace violations ranging from wage and reimbursement issues to conversion, breach of contract, unfair business practices, and wrongful termination in 2019.

RBC asks to dismiss the eighth cause of action for conversion and tenth cause of action for breach of contract under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 36.  The motion is granted, and the eighth and tenth causes of action against RBC are dismissed with leave to amend.

**LEGAL STANDARDS**

The Court has detailed the governing standards in other orders, and that discussion is incorporated here.  *See McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018).  In pertinent part, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff

must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Because this diversity case arises in California, California law applies." *Allstate Ins. Co. v. Smith*, 929 F.2d 447, 449 (9th Cir. 1991).

## DISCUSSION

## I.     THE CONVERSION CLAIM

The conversion claim may not go forward as currently formulated. The elements of conversion under California law are: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543-44 (1996)).

The SAC does not plausibly allege the first element. It says that Qayumi's supervisor at RBC asked her "to purchase office furniture, computer equipment and other supplies needed to equip the new RBC office," and that Qayumi purchased the items "using her own funds." Dkt. No. 33 ¶ 122. RBC allegedly promised to reimburse her for the purchases, but did not do so. *Id.* ¶¶ 113-17. In other words, Qayumi purchased the furnishings and supplies at RBC's instruction and on its behalf. That she used her own money and was promised reimbursement does not establish that she was "*entitled to immediate possession at the time of conversion.*" *See Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) (internal quotation and citation omitted) (emphasis in original). A "mere contractual right of payment, without more," does not establish a right of ownership or possession. *Id.* In light of this shortfall, the Court need not address the adequacy of the allegations for the second and third elements of conversion.

RBC says that the conversion claim should be dismissed with prejudice because it is duplicative of the seventh cause of action for failure to reimburse business expenses under Cal.

United States District Court
Northern District of California

United States District Court
Northern District of California

Lab. Code § 2802.  Dkt. No. 36 at 4-5.  The point is not well taken.  It is true that, in some circumstances, the "new right-exclusive remedy" doctrine provides that statutes like Section 2802 are the exclusive remedy and can preclude common law claims based on the same theory of liability.  *See Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1240-41 (N.D. Cal. 2015); *see also Rojo v. Kliger*, 52 Cal. 3d 65, 79 (1990) ("[W]here a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive.").  But Rule 8(d) expressly permits Qayumi to allege alternative and/or inconsistent theories of liability at the pleadings stage.  Fed. R. Civ. P. 8(d)(2), (3).  Consequently, the dismissal is with leave to amend.

## II.     THE CONTRACT CLAIMS

The contract claims against RBC also need improvement.  The elements of breach of contract under California law are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *see also Rudio v. Credit Control*, No. 16-cv-03003-JD, 2018 WL 4772303, at *2 (N.D. Cal. Oct. 1, 2018).

The SAC says that RBC breached "various oral contracts" with Qayumi "which required RBC to fulfill its promises of providing pay and benefits for hours worked."  *See* Dkt. No. 33 ¶ 130.  The problem for Qayumi is the SAC does not plausibly state that RBC made such promises.  Rather, the allegations indicate that RBC told Qayumi she would be hired by TalentNet, and that TalentNet would be responsible for paying her wages and benefits.  *See id.* ¶ 21 ("[RBC] told Plaintiff she would be hired as a contract employee through a staffing agency, TalentNet, who would handle payroll and other administrative aspects of her employment for RBC."); *id.* ¶ 131 ("Plaintiff was told she would get the benefits of being an employee of TalentNet, including regular pay, administrative support, and employee benefits.").  This does not square with a contract claim against RBC.

RBC's alleged oral offer to pay Qayumi $50 per hour, *see id.*, also conflicts with the terms of Qayumi's written employment contract that is attached as an exhibit to the SAC.  *See* Dkt. No. 33-1.  The written contract states that Qayumi would be paid $40 per hour to perform services for

RBC "on behalf of" TalentNet.  *Id.* Sched. A ¶¶ 1, 3.  It provides that "[t]his Agreement (including any Work Orders hereto) contains the entire agreement between TalentNet and [Qayumi] concerning the subject matter hereof and supersedes any and all prior and contemporaneous negotiations, correspondence, understandings and agreements, whether oral or written, respecting such subject matter."  *Id.* ¶ 16(g).  Qayumi's claims that a separate oral contract regarding her employment was formed and breached are again not plausible in light of this integration clause.  *See FormFactor, Inc. v. MarTek, Inc.*, No. 14-cv-01122-JD, 2015 WL 367653, at *7 (N.D. Cal. Jan. 28, 2015).

The SAC also alleges that a second oral contract was breached when RBC asked Qayumi to purchase items for RBC's office within an unspecified budget, "promised to promptly repay" her for the purchases, and did not do so.  Dkt. No. 33 ¶ 139.  But the SAC does not specify the terms of the contract (including the budget or the items Qayumi was authorized to purchase), what Qayumi purchased, when she completed the project, the expenses she submitted, or when RBC breached.  Without this information, a breach of contract claim is not plausibly alleged.  *See Heidingsfelder v. Amerisprise Auto & Home Ins.*, No. 19-cv-08255-JD, 2020 WL 5702111, at *3 (N.D. Cal. Sept. 24, 2020).  So too for the breach of the implied duty of good faith claims with respect to the contracts.  *See id.*; *see also Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) ("There is no obligation to deal fairly or in good faith absent an existing contract.").

The SAC does not state a viable breach of contract claim under the staffing contract between RBC and TalentNet.  Although the SAC alleges that RBC breached that agreement, it does not include any facts to suggest that Qayumi is entitled to sue for that breach under California's third-party beneficiary doctrine.  *See* Dkt. No. 33 ¶ 23, 41; *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019).

The SAC also appears to allege a breach of fiduciary duty claim against RBC under the tenth cause of action.  *See* Dkt. No. 33 ¶¶ 133, 135.  It says that TalentNet breached its fiduciary duty to Qayumi when it failed to pay her proper wages and benefits, and it makes a glancing assertion that TalentNet's breach "is attributable to RBC as RBC was told of the breach" and

failed to "intervene or rectify the errors." *Id.* ¶ 135. This theory of liability appears to be based entirely on conclusory allegations that TalentNet was acting as RBC's agent in administering Qayumi's benefits, and does not include any facts suggesting that RBC had any control over the TalentNet's administration of Qayumi's wages and benefits. *Id.* ¶¶ 132-33, 135. To the extent Qayumi seeks to hold RBC liable for TalentNet's alleged breach of fiduciary duty, that claim is dismissed.

Qayumi's suggestion that the SAC plausibly alleges an employment relationship between her and RBC, *see* Dkt. No. 38 at 9-10, is not a cure-all for these shortcomings. The SAC does not specifically allege the existence of an implied contract, nor does it assert breach of contract claims under that theory. *See* Dkt. No. 33 ¶ 130 ("Plaintiff was employed by Defendants pursuant to written and/or oral contracts of employment.").

RBC's suggestion that the breach of contract claims are barred on statute of limitations grounds, *see* Dkt. No. 36 at 8-10, is not appropriate for disposition in a pleadings motion. *See Beier v. Int'l Bhd. of Teamsters*, No. 18-cv-06632-JD, 2020 WL 1929225, at *3 n.1 (N.D. Cal. Apr. 21, 2020) (limitations arguments "are rarely appropriate for resolution at the motion to dismiss stage," and "need not be reached based on the dismissal on other independent grounds.").

## CONCLUSION

The eighth and tenth causes of action in the SAC against RBC are dismissed with leave to amend. Qayumi may file an amended complaint that is consistent with this order by February 3, 2023. A failure to meet this deadline or otherwise conform to this order will result in dismissal with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated:  January 17, 2023

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California

5